IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

KAYLE NETWON,
    Plaintiff,

v.

STEPHEN WULF,
    Defendant.

Case No. 4:22-cv-04088-SLD-JEH

### Report and Recommendation

Now before the Court is Plaintiff, Kayle Newton's, motion for default judgment, which Chief Judge Sara L. Darrow referred to the undersigned for an evidentiary hearing to ascertain the damages to which Plaintiff is entitled. (1/24/2024 Text Order). For the reasons set forth below, the undersigned recommends judgment be entered for Plaintiff in the amount of $174,401.43.

**I**

**A**

Plaintiff filed a Complaint (Doc. 1)[1] against Defendant Stephen Wulf on May 24, 2022. Defendant was served with notice (Doc. 8) on September 24, 2022, and filed an Answer (Doc. 9) on October 6, 2022. On July 13, 2023, Plaintiff filed a Motion to Compel (Doc. 13) after Defendant did not respond to Interrogatories or Requests for Production during Discovery. A telephone hearing on a Motion to Compel was set for August 14, 2023. (7/14/2023 Text Order). Defendant subsequently failed to appear for the Motion Hearing and the Court entered a Show Cause Order (Doc. 14), to which Defendant did not file a response. Thereafter, on September 19, 2023, the Court entered Default against the Defendant pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff filed a Motion for Default Judgment (Doc. 15) on December 12, 2023, claiming $275,000 in damages. The

---

[1] Citations to the case docket are abbreviated as "Doc.__at ECF p. __."

District Judge determined that Plaintiff could not provide sufficient documentary evidence from which the Court could ascertain her damages and referred the matter to the undersigned for an evidentiary hearing. (01/24/2024 Text Order). That evidentiary hearing was then held on April 4, 2024, to determine Plaintiff's damages.

### B

Plaintiff claims $275,000 in damages, including medical expenses, lost earnings, pain and suffering, and hedonic damages. These claims arise from an incident on June 8, 2020, where Defendant's dog attacked Plaintiff. (Transcript of Evidentiary Hearing 5:21-22). The dog knocked Plaintiff to the ground, resulting in her suffering a left ankle fracture that was subsequently surgically repaired. (6:21-7:24).

In the days and months following the attack and surgery, Plaintiff continued to experience swelling of her left lower leg and ankle and complications from her surgical intubation, including developing pneumonia. (8:6-9:15). These complications required further medical treatment, five emergency room visits, and a four-day-long hospital stay. (Doc. 19, Exhibit 1). According to Plaintiff, the attack also caused an increase in symptoms of her Gitleman's syndrome, which resulted in the need for her to receive additional medical treatment. (11:4-11). She now also requires physical therapy for her left leg and ankle. 9:16-20. In total, Plaintiff's medical treatment following the attack by Defendant's dog, including surgery, hospital admissions, diagnostic tests, and physical therapy, totaled $81,921.43. (Doc. 19, Exhibit 1).

Plaintiff also alleges damages for pain and suffering experienced as a result of the attack and her ensuing injuries and complications. Plaintiff still experiences pain, numbness, swelling, and skin discoloration of her left lower leg and ankle. (11:19-25). She states she now has limited range of motion in her left ankle, which often causes her to fall, and she now occasionally requires the use of assistive devices when walking. (12:1-17). For six months following surgery, Plaintiff was confined to a wheelchair, making her largely dependent on others. (12:21-24, 16:4-6). This restriction, coupled with her medical issues, led to her losing her job. (9:21-10:3). She had previously worked 35 to 40 hours a week, earning $12 per hour. (13:5-7). Plaintiff has not returned to work since. (13:10-13).

She was subsequently unable to pay her bills, her car was repossessed, and she feels she is no longer able to live the way she did before the dog attack. Plaintiff relayed feeling shame and embarrassment because of the repercussions stemming from the dog attack. (16:1-2). As a woman in her twenties, she feels the "best years of [her] life" have been negatively affected by the incident. Because, according to Plaintiff, her prognosis includes potentially lifelong left leg issues, and she will continue to be affected by this pain and mental suffering for an indefinite period of time. (14:5-9, 16:11-13).

## II

### A

When a default judgment is entered against a party, under Rule 55 of the Federal Rules of Civil Procedure, there are two methods of entering judgment. If the plaintiff's claim is for a sum that can be computed with certainty, the clerk enters judgment for that certain amount against the defaulting party. FED. R. CIV. P. (55)(b)(1). In all other cases, the plaintiff must apply to the court for a default judgment, where the court may then conduct hearings to ascertain the amount of damages. FED. R. CIV. P. (55)(b)(2).

Though a default judgment establishes the factual allegations of a complaint as true, allegations relating to the amount of damages are not and still must be proven by the plaintiff. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Using the principle of proximate cause, in the context of a default judgment, the plaintiff must show that the compensation she claims relates to damages that "naturally flow from the injuries pleaded." *Id*. at 893 (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)). When proving damages, the plaintiff has a more relaxed burden of proof than she does for causation. *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011). While damages may still be difficult to calculate definitively, the court is given "broad latitude" in determining damages after a default judgment, and any doubts when estimating damages are to be resolved against the defaulting party. *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014); *BCS Servs.*, 637 F.3d at 759.

B

Plaintiff's $81,921.43 in medical costs clearly stem from the June 8 incident with Defendant's dog. Her left ankle fracture was a direct result of the dog attack. Plaintiff's surgery and the ensuing medical complications caused by her injury and procedure "naturally flow" from the initial incident.

Six months of Plaintiff's lost earnings can also be traced back to the dog attack. Plaintiff's ankle fracture, six-month wheelchair confinement, and surgical complications resulted in her loss of employment. Given Plaintiff's testimony, she lost approximately $12,480 in wages in the six months she was wheelchair-bound. However, Plaintiff has not proven that any lost earnings beyond those six months "naturally flow" from the dog attack. According to Plaintiff, she could not work because of her frequent hospital visits and her wheelchair use, but it has been over three years since these were problems for Plaintiff. While her occasional use of a cane and left leg symptoms were proximately caused by the dog attack, these issues did not prevent her from finding and gaining some kind of employment in the past three and a half years.

Pain, suffering, and other hedonic damages are often difficult to quantify. In cases of dog attacks not involving bites and not requiring surgery, juries in Illinois have awarded between $6,000 and $12,000 in pain and suffering damages. *See M.B. v. Modrusic*, 2005 WL 2085762 ($6,155 in pain and suffering damages awarded to plaintiff who was knocked down by a dog and suffered a broken collarbone), *Hadalla v. Weiss*, JVR No. 151475 ($10,000 awarded for pain and suffering to plaintiff who sustained a wrist and hand injury after being pulled over by a dog), *Campbell v. Autenrieb*, JVR No. 1705100008 ($12,000 in pain and suffering and hedonic damages awarded to plaintiff who suffered a back injury while trying to avoid a dog attack). With some outliers, Illinois juries tend to be slightly more generous with pain and suffering damages in cases where the plaintiff was specifically bitten by a dog. Typical awards in these cases are generally between $10,000 and $20,000. *See Green v. Butler et al.*, JVR No. 211650 (plaintiff was awarded $15,000 in damages – $14,729 of which was non-medical – after a dog bite to the hand),

*Ellis v. Paprocki et al.*, JVR No. 1310250011 ($17,910 awarded in pain and suffering damages to plaintiff who suffered a dog bite to the arm).

In the case at hand, Plaintiff was not bitten by Defendant's dog, which would likely lower her pain and suffering damages. However, Plaintiff's case was somewhat more serious compared to many cases of dog attacks not involving a bite because her injuries required surgery. Along with her surgery, Plaintiff's case is also made more serious when taking into account the adverse effects she has experienced and will continue to experience following the injury and procedure. In addition to the pain caused by her injuries and medical complications, Plaintiff's mental and emotional suffering must also be considered. This includes her loss of employment and car, feelings of shame and embarrassment, and inability to live as she had been previously, all of which were proximately caused by the dog attack.

Even compared to cases where the plaintiff was bitten by a dog, Plaintiff's medical costs were substantial. For example, in *Green*, the plaintiff's injuries resulted in a mere $271 in medical damages. JVR No. 211650. Similarly, in *Hadalla*, the jury found the plaintiff had damages of approximately $20,000 in medical costs. JVR No. 151475. The ratio of pain and suffering damages to other damages awarded varies among the cases. On the lower end, pain and suffering damages were one-fourth the number of other damages in *Modrusic*, and about a two-fifths in *Hadalla*. *See* 2005 WL 2085762; JVR No. 151475. At the high end of the spectrum are cases such as *Campbell*, where damages awarded for pain and suffering were three time greater than the other damages awarded, and *Green*, where pain and suffering damages made up nearly the entire award. *See* JVR No. 1705100008; JVR No. 211650.

In this case, awarding Plaintiff pain, suffering, and hedonic damages near the higher end of the spectrum is appropriate. While Plaintiff's initial injury may not have been severe, the complications she faced as a result of her injury were substantial compared to the examined jury verdict cases. Not only did Plaintiff spend six months of her life dealing with considerable medical issues, but she is now faced with the prospect of these issues affecting her for the rest of her life. Additionally, she lost her job and car,

as well as experiencing overall feelings of shame and embarrassment. Accordingly, awarding the plaintiff pain, suffering, and hedonic damages in an amount roughly equal to her medical expenses is appropriate in this case. As such, Plaintiff is entitled to an award of $80,000 in pain and suffering damages.

### III

For the foregoing reasons, the Court recommends judgment be entered for Plaintiff in the total amount of $174,401.43, including $81,921.43 in medical damages, $12,480 in lost wages, and $80,000 in pain, suffering, and hedonic damages.

The Plaintiff is advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Entered on June 18, 2024.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE